limitations. And certainly the action and trial could not be sustained as one for damages for fraud in the compromise agreement because no such question of damages was submitted to, or passed upon by, the jury.

I further suggest: The court held no action could be maintained without proof by plaintiff of a valid claim to be compromised. This can hardly be true. All the plaintiff had to do was to prove that an accident occurred, a death resulted, and then that a claim of liability on the part of the defendant was made.

It was a disputed, resisted claim that was compromised, not necessarily a valid claim. A compromise involved an uncertainty as to whether the claim could be enforced. ·If certainty existed, a compromise would not ordinarily be made.

Judgment and order reversed, and new trial ordered, with costs to appellant to abide the event. All concur.

NEW YORK CENT. & H. R. R. CO. v. MOORE.

(Supreme Court, Appellate Division, Fourth Department. March 9, 1910.)

1. EJECTMENT (§ 10*)—RIGHT OF ACTION—TITLE TO SUPPORT.

Where it appears that more than 60 years before the trial one of plaintiff's predecessors in title built a house and barn on, and occupied and cultivated as a farm, a parcel of land under a deed, which included the land in question, plaintiff shows sufficient title to support his action for recovery of such land.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 30–41; Dec. Dig. § 10 ;* Adverse Possession, Cent. Dig. § 616.]

2. EJECTMENT (§ 86*)—PRESUMPTION AS TO TITLE.

A deed to land from a person in possession presumptively establishes title.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. § 239; Dec. Dig. § 86.*]

3. ADVERSE POSSESSION (§ 57*)—CONTINUITY OF POSSESSION—PRESUMPTIONS.

Possession of land once established is presumed to continue until the contrary is shown.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 655; Dec. Dig. § 57.*]

4. ADVERSE POSSESSION (§ 24*)—WHAT CONSTITUTES.

Adverse possession of land is not established by the occasional occupation by fishing apparatus and the occasional taking of sand from the premises without any established pit.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 114, 115; Dec. Dig. § 24.*]

5. LIS PENDENS (§ 13*)—NECESSITY OF NOTICE.

Code Civ. Proc. § 1524, provides that a final judgment in an action to recover· land is conclusive as to the title established on the party against whom it is rendered, and every person claiming from him by title accruing after notice of the pendency of the action is filed. *Held*, that an action to recover land is not affected by the pendency many years ago of an action by plaintiff's predecessor in title against defendant's grantor for the recovery of the same land, in which no notice of its pendency was

filed, and defendant purchased without knowledge that the title was in dispute.

[Ed. Note.—For other cases, see Lis Pendens, Cent. Dig. § 23; Dec. Dig. § 13.*]

Kruse, J., dissenting.

Exceptions from Trial Term, Monroe County.

Action by the New York Central & Hudson River Railroad Company against Frank J. Moore. Heard on motion by plaintiff for a new trial on exceptions after a verdict for plaintiff directed by the trial court at the close of all the evidence, and ordered to be heard in the first instance in the Appellate Division. Judgment ordered for plaintiff on the verdict.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE and ROBSON, JJ.

Eugene Van Voorhis, for appellant. Edwin A. Nash and Harris, Havens, Beach & Harris, for respondent.

ROBSON, J. This action has been twice tried. The first trial resulted in a directed verdict for plaintiff, which was afterwards, on defendant's motion, set aside upon the sole ground that testimony of deceased witnesses taken on the hearing of a prior action between the predecessor in title of plaintiff and the predecessor in title of defendant in which the right of possession of the same premises, which are the subject-matter of the present controversy, was involved, had been improperly excluded by the court. That order was affirmed on appeal to this court. 129 App. Div. 935, 115 N. Y. Supp. 1134.

The premises, title to which is in dispute, are about 260 feet in length and 50 feet in width in the northeasterly corner of the town of Irondequoit, near the southerly shore of Lake Ontario, and adjoin lands of the Rome, Watertown & Ogdensburgh Railroad, of which plaintiff is the lessee, on the north thereof. Both parties claim title to this parcel under conveyances thereof from different grantors. Each party claims to trace title by conveyance back to a deed from the Duke of Cumberland and others to John Hornby, dated September 21, 1815, conveying premises, within one or the other of two parcels of which the premises in question in this action are included. These two parcels are described, one as a lot in the north part of township No. 14, Seventh range (now Irondequoit), bounded on the east by Irondequoit Bay, north by Lake Ontario and west partly by another lot in said township, containing 494.56 acres, the other as the lot called the "sand bar" lying between the bay and the lake, and adjoining the last described lot containing 15.71 acres. Hornby and others in 1819 conveyed to Sylvester Woodman a part of these premises, described as being 100 acres in the northeast corner of the township, adjoining the sand bar, the boundaries of which are given as:

"Beginning at the northeast corner of said lot; running thence westerly along north line of lot, being the lake shore, 100 rods; then south parallel with the west line of lot so far that a line drawn from thence easterly parallel with the south line to the east line of lot being the shore of Gerundegut [now Iron-

dequoit] Bay and thence northerly along said east line of lot to the place of beginning will contain 100 acres and no more."

Plaintiff claims that the premises in question are a part of the premises thus conveyed, and traces its title thereto through mesne conveyances back to the Woodman title. In 1825 John Hornby and others conveyed to Roger Bronson a parcel of land described as lying and being in township No. 14, Seventh range, and further described as:

"Being three undivided fourth parts of the sand bar, so called, lying at the mouth of Irondequoit Bay and in the west side thereof, containing about 15 acres more or less, bounded on the west by the east line of a tract of 100 acres sold to Sylvester Woodman."

By a subsequent deed the remaining one-quarter interest was conveyed to Bronson. Defendant claim the premises in question are a part of the premises thus conveyed, and urges title thereto through mesne conveyances thereof originating in the Bronson title. As is said in the opinion of the court delivered on the first trial:

"The question so far as the paper title is concerned turns upon locating the boundaries of the lands conveyed by these deeds."

The east line of the Woodman premises is the west line of the Bronson land. The conveyance to Woodman makes the east line of the premises thereby conveyed the shore of the bay and the north line the Lake shore. The length of the northern boundary on the lake shore is given which would locate the northwesterly corner of the premises, provided the northeasterly corner thereof was once fixed. The length of the westerly line and the location of the southerly line would then remain the only undetermined factors in the description; for these lines with the shore of the bay and the lake shore are to include "100 acres and no more." The intention of the parties, as expressed in the deed, that the shore of the bay should be the east line, is certain. Following this conveyance the premises were surveyed by Johnson, a surveyor, but at that time no map was made. Johnson's field notes of the survey were introduced in evidence, and also a map of the land made in 1852 by Cornell, another surveyor, corresponding generally with Johnson's field notes. Another map apparently made with Johnson's approval, though many years after his actual survey, is also in evidence. From Johnson's field notes and the Cornell map it appears that in running the east line of the 100 acre tract the shore of the bay was not followed with exactness, but a broken line of irregular courses, evidently intended to roughly approximate the general line of the bay shore, which is designated as Johnson's traverse line, was followed. Between this line and the shore of the bay it appears that there were something over 10 acres of land. The traverse line with the other lines as surveyed and laid down on the map inclosed a fraction of an acre less than 100 acres. We are unable to conclude either from the survey and maps, or other testimony in the case, that it was the intention of the parties to the deed to exclude the shore of the bay as the fixed eastern boundary of the tract and adopt the traverse line in its stead as the actual eastern boundary. To presume such intention would be to contradict the express terms of the deed itself. So far as the description in the deed was departed from, if at all, it

was with reference to the west and south lines of the survey.   Granting that the actual bay shore is the east line of the 100-acre parcel, the proper adjustment of these lines to meet the requirements of the description in the deed is not material to the present inquiry.

The Johnson map shows the eastern and northern boundaries of the 100-acre tract as the shore of the bay and the shore of the lake, respectively.   As shown on these maps and by oral evidence, near the northeast corner of the tract a shallow arm or cove extended westerly from the bay into the mainland a short distance, narrowing from its mouth to its westerly end.   The land inclosing this cove extended north of and easterly therefrom a considerable distance, being low and flat, from five to eight rods in width, and separating the bay on its southern border from the lake lying north of it.   If the westerly end of this cove instead of the line of the high bank at its easterly end fixes the line of intersection of the bay shore with the line of the lake shore, then the last or northerly course of Johnson's traverse line is approximately accurate for the purpose of locating the point of its intersection with the lake shore as the northeasterly corner of the 100 acres; and plaintiff traces no title to the land in question back to the original grantor.   But it cannot be that this is the case; for the northern shore of the cove is as much a part of the bay shore as its southern side, and, adopting this view, the shore of the bay would extend some 6,000 feet easterly along the southerly shore of this narrow spit of land, lying between the lake and the bay, to an opening across it, which then existed, connecting the two waters. Another fact indicating that the west end of the cove was not considered as the termination of the line of the bay shore appears in the Cornell map, which shows that the Johnson traverse line crosses the cove; so that, in any event, the westerly part of the cove is within the lands inclosed by the lines of that survey.   In determining what was intended by the parties to the deed as the shore of the bay at this point, the cove may therefore properly be disregarded, and an extension northerly of the line of the bank of the bay shore proper to its intersection with the lake shore accepted as the line intended.   The Bronson land would then lie east of this line, and the land in question be within the 100-acre parcel.   Plaintiff's superior paper title to it necessarily follows.   That the parties to the deed did not intend the exact location of the northeasterly corner of township 14 as the actual point from which measurements of the 100-acre parcel were to begin also appears from the fact that the land described in the Bronson deed is in township 14; and, lying directly east of the northern extremity of the 100-acre parcel, it would necessarily be without the township, for its northwesterly corner could not be the northeasterly corner of the township of which it formed a part.   It seems, therefore, when the parties described the northeast corner of the township as the point from which the measurement of the 100-acre parcel was to begin, that it was their intention to refer, not to the actual northeast corner, but the point of intersection of the extension of the line of the principal shore of the bay with the lake shore.

Plaintiff's title is sufficiently supported for the purpose of establishing its right to maintain this action; it appearing from the evi-

dence that more than 60 years before the trial Samuel Bradstreet, one of its predecessors in title, built a house which he occupied and also built a barn upon and cultivated and used the 100-acre parcel as a farm. Bradstreet's possession was under a deed of the whole premises, which included the land to the shore of the bay on the east and the lake shore on the north. The premises in question are within these boundaries. A deed from a person in possession presumptively establishes title. Miller v. Long Island R. R. Co., 71 N. Y. 380. Possession once established is presumed to continue till the contrary is shown. Lazarus v. Phelps, 152 U. S. 202, 205, 15 Sup. Ct. 271, 39 L. Ed. 397. Defendant's right of possession must, therefore, rest upon a title established by adverse possession. The acts and occupation disclosed by the evidence, upon which defendant must rely to establish adverse possession, are the acts and occupation of Alfred Bronson, and the rights of ownership exercised by him over the western part of the premises in question, 165 feet in length, title to which defendant claims under his deed thereof from Bronson in 1902. The eastern part of the premises claimed by defendant came to him by mesne conveyances from Bronson and others it is true, but the Bronson title, if any, had passed from the Bronsons by conveyance as early as 1855. Bronson's adverse possession being limited, as the evidence discloses, to this western portion, even if it were established as to that part, would leave the plaintiff's title to the eastern part unaffected thereby. As to the western part of the premises, it appears that in December, 1893, Bronson, who was then, if ever, its owner, began an action in the Supreme Court against Letsie A. Allen, who was one of plaintiff's predecessors in title, the complaint in which he verified December 12, 1893, to recover possession of a parcel of land of which this 165-foot parcel was a part. In this complaint he alleges:

"That the defendant is in possession of said land and has been for several years last past, and the defendant has wrongfully ousted the plaintiff therefrom, and the defendant now wrongfully and unlawfully withholds the same from the plaintiff."

This is at least an admission that Bronson's possession of this parcel was then, and for some years prior thereto had been, interrupted. The action was tried and defendant succeeded. This result still stands as the termination of that action. It follows that, unless Bronson's title by adverse possession had matured before its interruption then admitted, defendant's plea of title based on that ground must fail. It is not claimed that Bronson inclosed or cultivated the premises at any time. The claim of actual occupation and improvement thereof is based upon an occasional sale of sand therefrom, an intermittent use of them for many years as a fishing ground with some more or less temporary erections used in drawing nets, and building a small shanty used by fishermen as a place to store boats and other material used in fishing. By whose direction the shanty was built does not appear. It also appears that in 1880 a cottage was built by one Way on some portion of the premises leased by him of Bronson, which burned in 1886, and one or two bathing houses, and temporary piers for steamboat landings were erected by Bronson's permission about the same time. But all these erections which may be termed im-

provements were within the twenty years preceding the date when, as he confesses in his complaint, his possession had been interrupted. The adverse occupation for the necessary period narrows, therefore, in its inception to the use made of it for fishing and the occasional taking of sand from the shore. To what extent sand was taken does not appear, except on one or two occasions; and it does not appear that there was any established pit, or place, from which it was taken, and the occupation by fishing apparatus was not continuous, so as to constitute an improvement of the land. Adverse possession is not made out by these acts. Mission, etc., v. Cronin, 143 N. Y. 524, 38 N. E. 964. Besides, the evidence does not satisfactorily disclose what portion of the land was occupied, nor that the occupation was exclusive. This should appear either directly from the evidence, or by reasonable inference therefrom.

Some vague testimony appears in the record that at one time a cedar post marked the recognized corner of the Woodman 100 acres and the corner of the town. But its location is too indefinite to raise a question of fact as to the practical location of the dividing line between the 100 acres and the sand bar. Some witnesses place it at a point now a considerable distance out in the lake; and Bronson locates it about the middle of the sand bar as it originally existed. He confesses he does not know what it was there for. In any event, if it was where he says it was, it could not have been intended to mark the northeast corner of the Cornell survey which clearly appears to have been farther north and in the lake.

Defendant also pleads in abatement the pendency of a former action, involving the same subject-matter. As early as 1882 the Rome, Watertown & Ogdensburgh Railroad Company, plaintiff's predecessor in title, began an action against Alfred Bronson to recover possession of the same parcel of land, which is the subject of the present dispute, which it is conceded was then in his possession. The action was referred to successive referees, and testimony was taken; but decision was not made because each referee died before finally disposing of the case. The last referee died many years ago. Nothing has since been done in the action. The defendant is now dead, and the plaintiff has parted with its right of possession of the premises. Defendant in the present action testifies that he bought the property in question without knowledge that the title was in dispute. No notice of pendency of this action was filed, and, of course, no judgment roll was ever made up. The statute provides (Code Civ. Proc. § 1524) that, except in cases not material to be here considered, a final judgment in an action to recover real property, rendered upon the trial of an issue of fact, is conclusive as to the title established in the action upon each party against whom it is rendered, and every person claiming from, through, or under him, by title accruing, either after the judgment roll, or notice of pendency of the action, is filed. A similar provision as to the time from which a judgment rendered otherwise than upon a trial of an issue of fact in such an action shall be conclusive upon such persons, under the conditions therein specified is found in section 1526. It would seem to follow that in no event could this defendant be bound by any judgment rendered in the former action,

even if it were revived. Appellant's counsel refers us to Sheridan v. Andrews, 49 N. Y. 478, as an authority in point that decision of the prior action would bind the parties to the present action. The statute in relation to actions of ejectment in force at that time fixed the commencement of the action as the time from which a judgment in such an action was, under specified conditions, made conclusive as to the title established therein against all persons claiming from, through, or under the party against whom the same was rendered. In view of the different provisions of the statute now in force, the case would seem not to be an authority that defendant in this action, a purchaser without notice of the former action, either actual or constructive, would be bound by a judgment in that action, even if it could be revived and prosecuted to judgment.

In specifying plaintiff's estate in the property, recovery of which is directed by the verdict, it is apparently by inadvertence stated "that the plaintiff is the owner in fee of the property in dispute." The complaint shows, and the proof establishes, that plaintiff is the lessee of the premises. No reference is made by counsel to this inaccuracy, and doubtless it may properly be corrected when judgment is entered on the verdict.

Defendant's exceptions overruled and motion denied, with costs; and judgment ordered for plaintiff on the verdict. All concur, except KRUSE, J., who dissents upon the ground that the trial court erred in directing a verdict for the plaintiff; (1) that the evidence supports a finding that the plaintiff's paper title does not extend east beyond a point in line with the west end or head of the cove as it existed when the Woodman deed was given, or, at least, not east of the so-called Johnson traverse line across the sand bar and that the sandy lowland lying north of the cove is not covered by the Woodman deed; (2) also that the question of adverse possession should have been submitted to the jury.